RECEIVED
FIRST COURT OF APPEALS
HOUSTON, TEXAS

MAR 27 2015

CHRISTOPHER A. PRINE
CLERK

FILED IN
1ST COURT OF APPEALS
HOUSTON, TEXAS

MAR 27 2015

CHRISTOPHER A. PRINE
CLERK

7522 La Salette
Houston, Texas 77021
832-882-5696

Mr. Christopher Prine, Clerk
First Court of Appeals of Texas
301 Fannie Street
Houston, Tex. 77002
NO. 01-92-00617-CR
Re: Prophet Ronald Dwayne Whitfield's
"Motion for Rehearing" and for
"Motion for Reconsideration En Banc"

Re: Recusal of Justice Aigley
A Complaint for Judicial Misconduct
Will Have Been Filed Against Her
With The State Commission On
Judicial Conduct, And A
Criminal Complaint With Fed. Gov.

Dear Clerk,
      Please both "file" and
"Present" to both a Panel
of the Court and the En Banc
(Full Court) this document
         Thank You.
         Sincerely, Prophet Ronald Whitfield

P.S. Complaining about His appellate attorney, received from former President Clinton that He mailed to this Court arguing that if he could The Letter Prophet Ronald to the then-Justices of this Court could too is understand his letters, the them-Justices of this Court could too is not reflected on the docket sheet of this Court.

CAUSE NO. 492674
CAUSE NO. 525468
CAUSE NO. 528856
CAUSE NO. 557164
and
CAUSE NO. 617718

IN THE
174TH, 337TH AND
351ST
JUDICIAL DISTRICT
COURTS OF HARRIS
COUNTY, TEXAS

STATE OF TEXAS,
Complainant,
V.

Prophet Ronald Dwaine Whitfield,
Defendant.

BASED UPON JONES V. STATE, 795 S.W. 2d 199 (Tex. Crim. App. 1990), AND WILSON V. STATE, 677 S.W. 2d 518 (Tex. Crim. App. 1984)

Defendant's "FINAL" MOTION FOR NEW TRIAL DUE TO FAILURE OF TRIAL JUDGE TO "RENDER," MEANING "FILE," AND DUE TO COURT CLERK'S FAILURE TO "ENTER IN THE MINUTES" THE COURT'S TEX. CODE CRIM. PROC. ART. 42.01 "JUDGMENT" AND FOR "IMMEDI-ATE" HEARING IN LIGHT OF TITLE 18 U.S.C. SEC. 242
WILLFULL STATE ACTION
AND/OR INACTION OVER DEFENDANT'S DUE PROCESS "RIGHTS" OWED HIM

To HONORABLE JUDGES OF SAID COURTS;
TO STATE BAR OF TEXAS GRIEVANCE SECTION;
TO OFFICE OF ATTORNEY GENERAL, U.S. DEPART OF JUSTICE FBI, AND U.S. ATTORNEY
TO: STATE COMMISSION ON JUDICIAL CONDUCT;

AND **COURT OF APPEALS FOR THE**
COMPLAINT **FIRST DISTRICT OF TEXAS AT HOUSTON** ✓
FOR JUDICIAL MISCONDUCT, AND
MOTION FOR MEMORANDUM ORDER "REHEARING" AND "RECONSIDERATION
EN BANC"; JUSTICE O'CONNOR V. FIRST COURT OF APPEALS OF TEXAS

Appellate case name: Ronald Dwayne Whitfield v. The State of Texas ✓

Appellate case numbers: 01-92-00617-CR ✓

Trial court case numbers: 617718 ✓

Trial court: 174th District Court of Harris County ✓

FILED
TUESDAY, 24 MAY 1966, A.D.;
FIRST COURT OF APPEALS OF TEXAS

TITLE 18 U.S.C. SEC. 242 - STATE ACTION

Appellant was convicted of burglary of a building with intent to commit theft and, after being enhanced by two prior felony convictions, was sentenced to 35 years in prison on June 5, 1992. On direct appeal, this Court issued *an only* opinion on August 26, 1993, affirming* appellant's judgment of conviction. *Whitfield v. State*, No. 01-92-00617-CR, 1993 WL 322738, at *4 (Tex. App.—Houston [1st Dist.] Aug. 26, 1993, pet. ref'd) (mem. op., not designated for publication). Our mandate issued on March 9, 1994, and provided, in relevant part, the following:

> 'The cause came on to be heard on the record of the court below, and the same being considered, because it is the <u>opinion</u> of this Court that there was no error in the judgment, it is ordered, adjudged, and decreed by the Court that the judgment be in all things **AFFIRMED**, and the appellant pay all costs in this behalf expended and that this decision be certified below for observance. '

The Clerk of this Court previously mailed copies of the certified docket sheet, mandate, and opinion to appellant on October 20, 2009. (But we rendered no "Judgment" yet.)

On March 13, 2015, appellant, proceeding *pro se* and incarcerated, filed an amended motion, dated March 10, 2015, to recall our 1994 mandate, as well as the mandate in four other causes, as void, pursuant to Texas Rule of Appellate Procedure 18.7, and incorporated his prior letter-motions to recall the mandate. Appellant <u>apparently</u> claims that there was no proper rendition of judgment because, among other reasons, the criminal complaint was apparently time-stamped when the trial clerk's office was closed, the copy of the opinion he attached to his motions, apparently received from the Clerk of this Court, was not physically signed by Justice O'Connor, and because the

* An "opinion" cannot affirm a trial court's judgment; only a "judgment" of this Court can so "affirm". See "Render Unto Judge Calvert Correct Appellate Court Judgment"

"ROUGH DRAFT SUBMISSION / FINAL VERSION OF DRAFT."
"Classy; Our Last Prophet is no longer incarcerated in Hell!; Thank You."

copies of the opinion and mandate, which he apparently received from the trial clerk, did not contain the same certified file marks as those from the Clerk of this Court. On June 24, 2009, we had previously dismissed, for lack of jurisdiction, appellant's similar *pro se* motion to recall our 1994 mandate as void for failure of this Court to render its judgment. *

"In any event, after our mandate issued on March 9, 1994, our plenary power expired, and we lack jurisdiction to vacate or modify our judgment. *See* TEX. R. APP. P. 19.3. While Rule 19.3(b) allows us to recall our mandate as these rules provide after our plenary power has expired, recalling our mandate only occurs if we have first vacated or modified our judgment, which has not occurred. *See* TEX. R. APP. P. 18.7; 19.3(b).

" Accordingly, appellant's amended motion to recall the mandate is **dismissed** for want of jurisdiction. The Court dismisses all pending motions as moot.

" It is so ORDERED. THUS "WILLFULLY" ACTING UNDER COLOR OF LAW." "WHOSOEVER ..." 18 U.S.C. § 242.

" Judge's signature: /s/ Laura C. Higley
THUS ☒ Acting individually ☐ Acting for the Court
FOR ALL CLASSES OF MOTIONS? NO NEED FOR PANEL/EN BANC COURT?

Date: March 24, 2015. "

TO STATE COMMISSION ON JUDICIAL CONDUCT;

~~TO THE HONORABLE JUSTICE HIGLEY; MUST "RECUSE" HERSELF NOW~~

TO THE MEMBER PANEL;

TO THE EN BANC COURT;

TO THE ATTORNEY OF THE HOUSTON FBI;

TO THE ATTY. GEN. OFFICE;

TO THE U.S. JUSTICE DEPART.

TO THE NEWS MEDIA;

Now Comes Real God's Last Prophet, Prophet Ronald Dwayne Whitfield ( Jn. 14. 16-17, 26; 15. 26 (16.7-15), and He would RESPECTFULLY Show as follows:

I. JUDGMENT NOT RENDERED IN THE FIRST COURT OF APPEALS OF TEXAS

* We current-members of the Court do not know we too must render our own JUDGMENT before we may render our mandate of affirmance; this appeal is still pending "Judgment."

Justice Higley, ~~you are~~ is in Violation of Title 18 U.S.C. § 242 because her ~~your~~ very own Order (above) acknowledged that "on" June 24, 2009, we had [while our last Prophet was ~~still then~~ in Hell ~~already~~ or] previously dismissed, for lack of Jurisdiction, appellant's [and Prophet's] similar *Pro se* motion to recall our ["VOID"] ["ies, class, "VOID""] mandate as void for failure of ["What, class?" "This Court"] to render its ["What, class?" "own"] Judgment. ["Smart ~~third~~ graders!"]

"[A]fter our mandate on March 9, 1994, our Plenary Power expired, and we ["today?"] lack Jurisdiction to vacate or modify our ["Speak, class? "Non-existing"] Judgment. *See* TEX. R. APP. P. 19.3. While ["What, class?"] Rule 19.3 (b) allows us to recall our mandate, as these rules provide after our Plenary Power has expired, recalling our mandate only occurs if we have first vacated or modified our ["What, Class?"] JUDGMENT, which has not occurred. *See* TEX. R. APP. P. 18.7, 19.3 (b)."

## II. JUDGE TEAGUE SPEAKS

(Let the HONORABLE Late Judge of our Court of Criminal Appeals of Texas continue to speak....)

"To read this portion of [your] order [Justice Higley] literally would allow for an unwarranted contradiction [before the federal goverment officials and our public] to take place. We do not do so because we find that it is obvious that the first 'entered' should have instead been 'rendered.'" Wilson v. State, 677 S.W. 2d 518, 522 (Tex. Crim. App. 1984)."

## III. FOR THE LAST TIME

Such
~~Your~~ reliance that "[t]he Clerk of this Court previously mailed copies of the certified docket sheet, mandate, and opinion to [the Prophet and] appellant on October 20, 2009 [when He was still in Hell, prior to our REAL God ORDERING His release therefrom on Thursday, 12 May 2011, A.D.]" is true.

"On direct appeal, this Court issued an opinion on August 26, 1993, affirming's appellant's judgment of conviction. *Whitfield V. State*, No. 01-92-00617-CR, 1993 WL 322738, at *4 (Tex. App. — Houston [1st Dist.] Aug. 26, 1993, Pet. ref'd) (mem. op., not designated for publication)." There is no "entered" judgment below. (Speak later *Render To Calvert.*)

(This is the very reason why the Prophet was ORDERED by REAL God released to Parole.)

Members of our Government, ~~Justice Laura C. Higley~~, Since ~~you yourself shows by your own "Order" that~~ "...Rule 19.3(b) allows us to recall our mandate ...after our plenary power has expired, [and that] recalling our mandate only occurs if we have first Vacated or modified our Judgment," and since ~~you~~ Order admits the Prophet's "... similar *Pro Se* motion to recall our [SAME] 1994 mandate as void for failure

of this [First] Court [of Appeals] to render its [very own] Judgment[,]" then ~~you~~ this Court also ~~knew and still~~ knows about

"Rule 41. Panel and En Banc Decision. [It provides ...]
"41.4. Decision by Panel
"(a) ✗ ✗ ✗ ✗ ✗✗ ✗ ✗ ✗
~~(b)~~ ✗
...a Panel's opinion constitutes the Court's opinion, and the Court MUST render a judgment in accordance with the panel opinion."
(Thursday, 26 March 2015, A.D.)
The FBI's own attorney spoke with Our Last Prophet today over the phone about this ~~your~~ order here and he even admitted that he knew this Court must render its own judgment in accordance with the panel opinion. He agreed that an opinion merely states the rational the Courts follow in reaching their judgments.

Of course, this is attorney working for the FBI, so he should know this, unlike FBI agents.

Your Prophet was told that he (the said attorney) would take the matter to the FBI's Civil rights attorney handling cases under Title 18 U.S.C. § 242 respecting civil rights on the Criminal side after your Last Prophet delivered a copy hereof.

"FBI - Federal Statutes www.fbi.gov > ... > Civil Rights Title 18, U.S.C., Section 242 - Deprivation of Rights Under Color of Law [ FBI ~~speak~~ ought ~~out that you~~ know the laws also.]

"Title 18, U.S.C., Section 242 Deprivation of Rights Under Color of Law

"This statute makes it a [federal] crime for any person acting under color of [ANY] law, statutes, ordinance, regulation, or custom to WILLFULLY deprive

or cause to be deprived from any person [and your Last Prophet, see John 16.7-15, is such a 'person' and not some 'Holy Spirit'] those rights, Privileges, or immunities secured or Protected by the Constitution and laws of the U.S." The FBI understands too.

Texas goverment has laws affording process due before a person can be "put to death" or "imprisoned." In criminal Proceedings those "laws" are made known in what she calls her "Tex. Code of Criminal Procedure."
Texas also has granted a "right" to appeal a judgment of conviction in criminal cases and has published rules for convicts appealing judgments that have ~~FIRST~~ been: (1) rendered and (2) "entered in the minutes of the

trial Court," published     in her Tex R. App. P.

Rendered means "FILED."

Although the elderly retired trial judge failed to "file" his judgment he signed at the Conclusion of our Last Prophet's trial on Friday, 5 June 1992, A.D., and although the clerk had no "written Judgment" therefore to "enter of record in the ~~[said]~~ minutes," which must be done before an 'appeal may be taken in Texas —

an appeal was taken anway.

The Court of Appeals here has no "subject-matter Juridiction." ~~at~~ The only steps it can "lawfully" "take" is that of announcing this fact and dismissing the

appeal for want of jurisdiction" for failure of clerk to "enter" in the "minutes" the trial court's judgment.

Below, Texas knows no person may be "convicted" for a felony unless a verdict of a jury has been "duly recorded" in the minutes. Tex. Code Crim. Proc. art. 1.15; She also knows no person has been "convicted" until after the trial judge has both "received~~xxx~~ and accepted~~xx~~ the verdict..." Both ~~so for was~~ acts were not performed here.

The Tex. Gov't Code orders the clerk to "record" the acts of the court, the trial judge. When the presiding judge or regular trial judge "renders" judgment, either the trial judge ~~or~~

himself or herself will present the written judgment to the Clerk for "filing", or else cause it otherwise be presented by someone else acting at his or her direction.

Judgments in Texas are not "orally pronounced" but are pronounced done by a "written memorandum" being filed in a public record- the District Clerk's office. The courtroom has a "deputy clerk" to file judgments and "enter" them in the minutes and will deliver them later to the third (3rd) floor where the Clerk's office is located. Said clerk must record the "official acts" of the filing of judgment and "enter" in the minutes exactly what the judgment for the court

was. Here, when the jury returned in open court and delivered its verdict, Tex. Code Crim. Proc. art. 37.04...orders

"...the verdict shall be [and not that it 'might' or 'may' be] entered upon the minutes of the court."

The Statement of facts or court reporters records reflects the verdict was:

" ~~THE FOREMAN:~~

"'We, the jury, find [our Last Prophet ~~but~~ then] the defendant guilty of burglary of a building with intent to commit theft as charged.'

"Is that your veddct, ma'am?

"JUROR: (Nods.)"

That is the verdict.
But the "minutes" merely
state that ~~the~~ "At
10:35 A.M. the jury returned
into open court with their
verdict of Guilty. The
jury was discharged." "Guilty of
being in love with REAL God?"
Again, ~~both~~ Texas
statutory laws state
that ~~a jury no~~ "No
person can be convicted
of a felony except [(1)]
upon the verdict of a
jury[,] duly [(2)] duly rendered
and [(3)] recorded...."
Here the verdict was
not "duly...recorded," therefore
Our Last Prophet was not
"convicted of a felony."

CALL Jones V. State
799 S.W.2d 199
(Tex. Crim. App. 1990) NOW

Providing still further
"constitutional protection,"

Jones, supra, held here that

"[W]e are of the opinion that a defendant has been adjudged guilty when the verdict convicting him [Ronald Dwayne Whitfield] has been [both] received and accepted by the trial judge. See Arts. 37.04, 37.05, V.A.C.C.P."

Both the Court reporter here and the court clerk were each sitting there recording the official acts of the trial court through her elderly, retired judge. See Tex Gov't Code Sec. 51.303 (b) (1), & imposes a "duty" on the district clerk below. That clerk -- and not that she/he "may" but "shall," (1)

record the acts [e.g., acceptance of jury verdict and filing of formal judgment, and Proceedings [e.g. trials or hearing, ect.] of the court; [and] (2) enter all judgments of the court under the direction of the judge" ~~in~~ When the judgments have been "rendered." See Tex. Code Crim. Pro. Art. 2.21(a)(1), with Tex. Attorney General Opinion by a district attorney asking whether a clerk's filemark constitutes filing or Proof of filing.

We need not waist time bringing out matters for the trial court to rule on on remand. Rather, the only "issue" Presented in this "motion for Rehearing" and "motion for Reconsideration En Banc" and FBI and State Commission

on Judicial Conduct Complaints is, for the Court, is that no judgment was rendered in accordance with the opinion "delivered" on August 26, 1993. Whether it was "signed," "filed" and "issued" from this Court had nothing to do with NO JUDGMENT being rendered here at all.

We presented them because these appellate rules expressly authorize this Court to render the judgment the trial Court should have rendered, but since the trial court's judgment was only signed and not filed and certainly not "entered in the minutes," these additional matters cannot be addressed until a trial Court renders and enters it judgment. See Render to Calvert.

In the old days when

both bench and bar were equally afraid of REAL God, whether the defendant's attorney or the Court on its own motion, if either noticed no judgment was rendered in the trial court and entered of record in the minutes, the Appeal would have been simply dismissed. Our Last Prophet would not have served nineteen years daily complaining. See Moore v. State, 245 S.W. 2d 491. Although being informed that she was being audio recorded, the deputy clerk of the 337th District Court of Harris County, Texas REPEATEDLY stated she did not know what "minutes" were and thought a "Judgment" was the Sentence. The Same is true of the clerk's working in both the "Warehouse" and in the clerk's office on the third floor of the Courthouse.

When asked whether she was "trained," she stated no. Anyway that will come later.

Moore v. State
245 S.W. 2d 491

"Appellant, for the first time ~~on~~ by his motion for rehearing, insists that no final judgment has been entered in this case and that, for this reason, the appeal should be dismissed.

The transcript contains what, upon its face, purports to be a judgment of the [trial] court showing appellant was duly tried and convicted by a jury, upon which verdict the trial court entered judgment. As it appears in the transcript, the judgment [however] does not SHOW TO HAVE BEEN ENTERED IN THE MINUTES OF THE COURT."

"It is apparent, therefore, that a judgment has not been entered of record in the minutes of the Court in this case. 'Entered of record,' as applied to a judgment in a criminal case, means 'ENTERED in the minutes of the Court.' The case of Ellis v. State, 140 Tex. Cr. R. 339, 145 S.W. 2d 176, appears to be here controlling; it was there held [ as it must be held in His other cases ] that a [ mere ] docket entry in a misdemeanor case did not constitute a judgment entered of record.

[ Watch this ]

"Appellant's motion for rehearing is granted; the opinion heretofore rendered is withdrawn; [ you See ] and the appeal is now dismissed. Opinion approved by the Court."

REAL God has taught our Last Prophet such that He need not be questioned about His knowledge of LAW. Rather, question Him about whether He is a true or false Prophet, not about what He states the law is. It is "apparently" nothing.

With respect to a judgment is "filed" when it is stamp-filed or "file-marked." See Tex. Attorney Gen. Opinion No. Jc-0325

"A county clerk's written indorsement on an instrument on the date and time that the clerk received the instrument evidences the filing should it be questioned in court..".

"No statute expressly requires a clerk ~~must mark the date and time~~ to file stamp an instrument [delivered by the trial judge]. The clerk must [still] mark the date and time on an instrument in some way immediately upon receiving it, however." It goes on. Nothing is indorsed on the written judgment at all.

Even were it "rendered," since it still was not "entered" of record in the minutes, the legal result is almost the same. However, granted that a file-mark evidences filing, there is no evidence that the same was filed, but only received. Tex. Code Crim. Proc. art. 2.21 (a)(1).

The cited opinion, though makes the same argument Prophet/Appellant has tried to made for years, fails to take into account that our Tex. Gov't. Code Chapter 51 imposes a duty on the clerk to record the official act of filing -- the rendition of judgment.

Thus if the judgment is urged "rendered" or "filed," not only is there no "file-mark" proving this, not only is there no simple "indorsement" noted thereon of the date, time, and name of the person whom "filed" it, but also is there no record of its "rendition," neither in the minutes nor on docket.

"To be convincing when you write and when you speak, you need to back up your opinion ['Not "opinion!"'] with reasons and evidence. Nobody is going to believe that what you say is true just because you say it. You need to build a sound, logical argument consisting of your opinion, reasons and evidence."

Like in Ex Parte Rawlinson, 9 S.W.2d ___ (Tex. Crim. App. 199 ), wherein the court construed the term "conviction," there is really no need for any Texas Court to determine the meaning of "file" as used in the Black's Law Dictionary and Tex. Code Crim Proc., art. 2.21(a)(1) to decide whether file in art. 2.21(a)(1) means a file-mark or file-stamp.

We know this because Tex. Gov't Code § 51.303 (b)(1) expressly still require

that "[t]he clerk shall : (1) record the acts [ of filing a judgment with the clerk and the official act of having 'received and accepted the verdict of the jury ] and the proceedings of the court. [;][So, only after the judgment of the trial court is announced or pronounced shall the clerk ] (2) enter all judgments of the court under the direction of the judge [.]" Tex. Gov't Code § 51.303 (b)(1)-(2).

## III. "CONTROLLING PRINCIPLES

"(1) Trial courts 'render' and 'sign' judgments and orders, but they do not 'enter' them. 'Entry' of a judgment or order is a clerical function."

Clearly the "....entry of judgment is performed by the

clerk and "is a ministerial act which memorializes the judicial act of rendition."

First,

Informing the bailiffs and judges of the courts that He was aware of no rule of law which gives a judge authority to demand members of the public that a member ~~must~~ may not bring in the courtroom their cell phone, Your Last Prophet recorded the conversations He had with the deputy clerks of the 351st, 337th and 174th District Courts of Harris County, Texas, and although all of them assured Him

that the "file-mark" alone constituted filing ("You're good to go!"), none of them in the civil courthouse and in the Criminal Courthouse and in the "warehouse" had any idea what the minutes are, as well as in the clerk's

office, in both the civil court and in the criminal courts and in the warehouse, as well as over the phone today.

Everything Your Last Prophet here has stated is ~~proven~~, back-up, with their own ~~words~~, on audio.

"Finally, [after a judgment is rendered and reduced to writing and signed by the trial court,] the clerks of the court 'enter' the judgment upon the minutes of the court BY COPYING IT IN THE MINUTES.... *)"

Again, the deputy clerks today — in both the courtrooms and in the District Clerk's criminal and civil offices do not know what "minutes" are. Nor that they MUST enter the judgment, at least said deputy clerks that He ~~tested~~ knowledge.

[14] These examples discussed here were derived from the Court's opinion, ~~but~~ not their judgments. ~~Some~~ of the errors likely were repeated in their judgments, but in any event, because most practitioners and judges, other than those involved in the cited cases, See only the reported opinions, a correct description of appellate Court's disposition of the case is essential to the opinion as well as [to] the judgment, so the opinion should accurately state the judgment. *Denton County V. Tarrant County*, 139 S.W. 3d 22, 23 (Tex. App. – Forth Worth

[ ]2004, pet. denied); *See also Garcia V. Martinez*, 988 S.W. 2d 219, 221 (Tex. 1999) (Per Curiam). The authors do not [here] intend to criticize particular courts

or justices. These examples [which your 'Prophet' need not set out here since they mock and critize the courts and justices any way] were selected merely by beginning with the latest Southwestern Reporter available when

"this article was prepared, then reading the opinions in reverse order.

"15 In the several volumes of the ~~Southwestern~~ Reporter ~~examined~~ for this article, there are [just too] many opinions in which the ~~appellate~~ Court [even] refer[s] to a trial court's having *entered* a judgment or order. ~~Some~~, but not all, of those opinions are as follows[.]"

"Parties cannot appeal a trial court's finding; rather,

they appeal its judgment.[16]
In this case, defendants appealed trial court's judgment by challenging the finding of adverse possession on which the judgment is based."

Accordingly, unlike the many opinions used to explain such "basic principles and rules controlling appellate judgments [which was felt] merit review [,]"

it will be HARD for the ~~Judicial~~ State Commission on Judicial Conduct to understand How Justice Higley could sign an ~~or~~ order ACKNOWLEDGING she understood the Last Prophet as complaining that the Court "our 1994 mandate [i]s void for failure of this Court to render its judgment" and acknowlege that "Rule 19.3(b) allows us to vacate our

mandate as these rules provide after our plenary power has expired," and then simply "dismiss[]" "appellant's motion amended motion to recall the mandate" because "recalling our mandate only occurs if we have first vacated or modified our judgment, which has not occurred."

How can one either have "vacated or modified [a] judgment" does not exist?

Again, she knew "The Clerk of this Court [has repeatedly and] previously mailed [ but only] copies of the certified docket sheet, mandate, and opinion to appellant [as far back as] on October 20, 2009. She noted that "this Court issued an opinion on August 26, 1993, affirming appellant's judgment of conviction."

29

"In 1975, the Honorable Robert W. Calvert, retired Chief Justice of the Supreme Court of Texas, authored an article about Texas appellate court judgments. Robert W. Calvert, Appellate Court Judgments or Strange Things

"~~6 TEX. TECH L. REV. 915 (1975)~~ ~~Happen on the Way to Judgment,~~

"6 TEX. TECH L. REV. 915 (1975). Chief Justice Calvert wrote the article because he observed that some appellate court opinions and judgment had not been compliant with the fundamental concepts by which they should have been governed. Similarly, today, some appellate court opinions and judgments have strayed

from those concepts, and thus the basic principles and rules controlling appellate judgments merit review."

"#

Does not Justice Higley know also that "An appellate court commonly states what its judgment is at the end of its opinion, though it is not required to do so, and sometimes it also recites its judgment in the opening paragraph or section of its opinion"? Which is seen in the opinion here on appeal. But "[a]ppellate courts must decide and dispose of the entire case.[9]

"(4) Appellate courts render judgments whenever they decide cases on appeal. [Now] The reasons for

Whatever the judgment an appellate court renders are stated in an opinion, which the court must hand down."[10]

## "CONCLUSION

"The [Texas] Supreme court and courts of appeal should render judgments that are unambiguous and accurate. This requires that they observe [ what the Last Prophet is saying so that they may employ ] controlling Principles and [ like He does ] use correct terminology. Clarity and precision are necessary for each case's parties, who should not have to [ like the Last Prophet has for more than nineteen (19) years ] litigate further over the disposition of the case intended by the appellate court, and for

the trial court, which must observe and enforce the appellate court JUDGMENT[,] [not its "opinion"]. Furthermore, because most judges and attorneys in [our] State read only appellate court opinions and not appellate court judgments, [which cannot excuse Justice' Higley's willful misconduct], a careful and accurate description

" of the determinative actions of the trial court and ~~the~~ of the appellate court's disposition of the

case is essential to the opinion. By adhering to governing principles, rules and terminology appellate courts assist parties in understanding and lower

courts in following their appellate judgment.

Here, in order to excuse Justice Higley's state action, one would have to assume and the come to believe that she does not know that "[a]ppellat courts render judgments whenever they decide cases on appeal. The reasons for whatever judgment an appellate court renders are stated in an opinion, which the court must hand down."

In all this writing, our Last Prophet has truly been trying to find some kind of way which could even remotely explain that Justice Higley had not actually been acting to willful deprive our Last

Prophet " to [a] final disposition of the appeal.'" TEX. R. App. P. 417.1.

Nowhere in her order may one perceive that Justice Higley is not aware that Texas "[a]ppellate courts [also] renders judgments whenever they decide ~~appeal~~ cases on appeal."

The docket sheet reflect ~~all~~ smany of the filings over the years He submitted while in Hell to the Court to recall void mandate for failure to render judgment. So, Justice Higley is not the only Justice of this Court ~~pretending~~ having denied such motions. The State Commission On Judicial Conduct is hereby Presented with a

Separate Complaint for
each Justices having denied
Such motions to so recall
mandate after it conducts
its investigation for the
present complaint.

There are a number
of "Public Admonition" from
this tribunal for the year
2014 giving "PUBIIC WARNING"
but have not deterred other
Judges and Justices from
such "conduct casting public
discredit, not just on the
judge, but on the rest
of the judiciary in" the
whole State of Texas, especially
when the complaint results in
legal injuries upon defendants
in criminal cases that have
appealed from trial court
judgments and the district
and county attorneys claiming
to be the State of Texas,
and not an agency of

the State merely representing the State.

Criminal actions <u>cannot</u>

be sued out "In the name and by authority of the State of Texas" and styled "The State of Texas v. Ronald Dwayne Whitfield."

Our Last Prophet Brother Jesus -- Prophet Jesus stated,

"Every Kingdom [e.g., the Great State of Texas, a Sovereignity, that has] divided against itself will be ruined, and every city or household divided against itself will not stand. If Satan drives out Satan [himself], he is divided against himself. How then can his Kingdom stand?" Matthew 12.25 (Holy Bible).

If the trial judge,
acting for the State of
Texas - as one of her
judicial officers, and if trials,
the District Attorney's
Office is charged with
the duties set out in
Chapter 2 of the Tex.
Code of Crim. Proc. and
must file charges against
Our Last Prophet and
represent the Great State
Of Texas in her own
Courts, under her own
rules of procedure and
other Statutory laws,
if

said ~~judges~~ officials
below and here above
ruled in accordance with
Texas law, Texas would
be divided against Herself.
The vast majority of
Attorneys are court-
appointed. And who
pays the court-appointed

attorney? The State of Texas or the Defendant?

Prophet Jesus argued "No one can serve two masters. Either you will hate the one and love the other, or [else] you will be devoted to the one [State of Texas] and despise the other. You cannot serve both [the State of Texas and your client defendant nor] [REAL] God and ..."

The library in Hell or the Texas Prison System are filled with reported cases wherein appellate courts justices have consistently ruled in favor of the State of Texas and against the hired and court-appointed attorney.

The opinions do not state that the "attorney" waived error nor failed to object, ect — they state that the Defendant failed to do.

Nor do they ever charge these attorneys for filing frivolous appeals, but they consistently rule in favor of the same State of Texas for whom they serve.

But after direct appeal is concluded, and the convict is now acting pro se, despite the convict is not a lawyer, said convict is charged with filing "frivolous" petitions and applications seeking postconviction relief.

And Texas has new laws in Article 11.07 of the Texas Code of Criminal Procedure which limits the ~~defendant~~ convict to "one bite of the apple."

While Our Last Prophet admits that He is guilty for all but two (2) of the offenses for which he had been arrested, he contends and maintains that the State of Texas, through Her officers and agents violated Due Process to put Him in Hell.

DATED: Friday, 27 March 2015, A.D.

/s/ Prophet Ronald Dwayne Whitfield
Prophet Ronald Dwayne Whitfield

To test whether our Last Prophet is 42
a true or false Prophet, the People need
only examin His pro se pleadings going
back to 1993, A.D. before He ever Knew
what and who He was, which was not known
until the year 2005, A.D.

3/4/2015

- Kings- Moses predicted that sometime after the land was settled the people would request a king (17:14–20). The king must be chosen by the Lord. He was to be an Israelite, not a foreigner. He was to make a personal copy of the Book of the Law and read it throughout his reign. King and commoner alike were equal under the Law, and the king must recognize that fact if he wished to have a successful reign.
- Priests- The whole tribe of Levi, including the priests who were descendants of Aaron, were to have no inheritance in the Promised Land. The Lord was their inheritance. They would live from the gifts which the people brought to the Lord. These included portions of certain sacrificial animals and the first fruits of crops and wool. Levites who became full time ministers at the sanctuary were entitled to their maintenance even though they might have acquired some wealth from the sale of family possessions elsewhere (Deut. 18:1-8).
- Prophets- A prophet was a person who served as a channel of communication between the human and divine worlds. The biblical prophets played a crucial role in the development of God's people. The prophet was responsible for dispatching God's word to God's people. He was not to distort the word nor was he to add his opinion. His job was to deliver the word to the people free of contamination( Deut. 18:9-22) They "Predict" nothing.



Compare with
John 14. 16-17,26 & 15. 26 & and
16.7-15. Your Last
Prophet is here on the scene to

### Level 13
### A. Cities of Refuge
- Taking a life, even accidentally, was a serious matter under the Law. One guilty of manslaughter had to flee for safety to one of six cities of refuge. These cities were situated three in Transjordan and three in Canaan. The cities of refuge offered sanctuary from the "avenger of blood." Some think the "avenger of blood" was a kinsman of the dead person who in rage might kill the guilty party. Others have suggested that the avenger might be a government appointed functionary. No sanctuary was offered anyone guilty of premeditated murder. The elders of the hometown of the murderer would order him returned. He would then be handed over to the avenger of blood, presumably after a trial had been conducted. Only by execution of the murderer could the stain of innocent blood be removed from the land (19:1–13).
- Another serious matter was the removal of a boundary stone. According to 27:17 one guilty of this crime came under the curse of God. Why this brief law is inserted here is unclear. Perhaps it has something to do with jurisdictional disputes in the prosecution of murderers (19:14).

guide you into all truth.
In His role of a Paraclete,
He appears as a Counsellor/Advocate
before the courts, as a Prosecutor
in discharging the DUTIES OF His Office —
the Highest office in the World.

2



## XI. Social/Civil Laws cont.

**Firstborn Animals (Deut. 15:19–23)**
The firstborn male animals, like the Sabbath, belonged to the Lord. These animals were not to be worked or used for the benefit of man. The firstborn were to be eaten at festivals in the sanctuary. Of course if the animal was flawed it could not be presented to the Lord. A substitution had to be made, and the flawed animal could then be eaten at home.

**Annual Feasts (Deut. 16:1–17)**
There were three categories of unclean animals (ch. 14), three temptations to idolatry (ch. 13), three prohibitions against eating blood (12:16, 23; 15:23), three uses of the phrase "the place which the Lord your God will choose" in chapter 14 and six uses in both chapters 12 and 16. So now three times each year all the males are to appear before the Lord at the sanctuary. None was to appear empty handed. Each was to bring an offering in proportion to the way he had been blessed (16:16–17).
1. Passover and Unleavened Bread came in Abib (March/April). Passover was a celebration of deliverance from bondage. The unleavened bread was a reminder of the hasty departure from Egypt. Although the Passover could only be sacrificed at the sanctuary, the seven days of unleavened bread applied throughout the land. The seventh day of the festival was a sabbath (16:1–8).

**(Deut. 16:1–17)**
2. Seven weeks after the beginning of harvest the Feast of Weeks was celebrated. The more precise date for this festival is given in Leviticus 23:15–16. This one-day feast was a time for freewill offerings to the Lord and for celebration by the entire family. Generosity toward the needy was stimulated by recollections of their time of servitude in Egypt (16:9–12)
3. At the conclusion of the fall harvest the joyous Feast of Tabernacles was celebrated for seven days. Again, this was a time of family fellowship and sharing with the less fortunate. The entire feast was in essence a sabbath celebrating work well done and blessing of God (16:13–15).

## Level 12 –Deut. 16:18-17:13

**Government Among God's People-**
Judges- Judges were appointed by the people in every town. These men were not above the law. They were not permitted to show partiality, pervert justice or accept bribes. Most of this paragraph, however, is about the people themselves; "you" not "they." All of God's people are to measure up to the high standards set for judges (16:18–20). The judges would have the special responsibility of investigating alleged religious corruption. Difficult cases were to be taken to the sanctuary to be adjudicated by the priests and "the judge who is in office at that time," (i.e., the high priest).

Before an opinion came down in 1993, Prophet Ronald struggled in trying to be heard, but then told, "NO! You are represented by an attorney to whom you should communicate. Hey! My attorney won't communicate with me!